IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

VANCE D. WRIGHT, )
)
      Petitioner, )
)
v. ) Case No. 17-CV-0688-GKF-FHM
)
JANET DOWLING, Warden, )
)
      Respondent. )

## OPINION AND ORDER

Petitioner Vance Wright, a state inmate appearing pro se, commenced this action on December 28, 2017, by filing a 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. 1). Respondent moved to dismiss the petition on exhaustion grounds on March 5, 2018 (Dkt. 18), and Petitioner filed a timely response (Dkt. 20). By Order filed September 10, 2018 (Dkt. 22) the Court directed Petitioner to file an amended petition, presenting only exhausted claims, and denied as moot Respondent's motion to dismiss. As directed by the Court, Petitioner filed an amended petition (Dkt. 23) on September 14, 2018.[1] Before the Court is Respondent's motion to dismiss the amended petition for failure to exhaust necessary state remedies (Dkt. 27), filed November 15, 2018. Respondent filed a brief in support of the motion (Dkt. 28). Petitioner did not file a response.[2] For the reasons that

---

[1] Because the amended petition replaces the original petition, the Court declares moot the original habeas petition (Dkt. 1).

[2] In its September 10, 2018 Order, the Court advised Petitioner that he would have 21 days to respond to any dispositive motion filed by Respondent. Dkt. 22, at 1, 9.

follow, the Court denies the habeas petition and dismisses as moot Respondent's motion to dismiss the amended petition.

I.  **Background**

Petitioner challenges the constitutional validity of the judgment and sentence entered against him in the District Court of Rogers County, Case No. CF-2012-536. Dkt. 23, at 1. In that case, a jury convicted Petitioner of first-degree murder and, consistent with the jury's recommendation, the trial court imposed a sentence of life with the possibility of parole. *Id.*; Dkt. 28-2, at 1.[3]

Represented by counsel, Petitioner filed a timely direct appeal claiming (1) the trial court failed to properly instruct the jury, in violation of his Fourteenth Amendment right to due process, (2) trial counsel was ineffective, in violation of his Sixth Amendment right to the effective assistance of counsel, (3) the trial court erroneously admitted inculpatory statements Petitioner made to a jailhouse informant, in violation of his rights under the Sixth and Fourteenth Amendments, (4) the State's evidence was insufficient to support his conviction, in violation of his Fourteenth Amendment right to due process, (5) the trial court erroneously admitted Petitioner's statement to police, in violation of his Fifth and Fourteenth Amendment rights, (6) the trial court erroneously admitted prejudicial photographs, in violation of Petitioner's constitutional right to a fair trial, and (7) the cumulative effect of trial errors deprived Petitioner of his constitutional right to a fair trial. Dkt. 28-1, at 2-3. In an unpublished summary opinion filed May 4, 2016, in Case No. F-

---

[3] For consistency, the Court's citations refer to the CM/ECF header page number located in the upper right-hand corner of each document.

2014-1051, the Oklahoma Court of Criminal Appeals (OCCA) rejected each of Petitioner's claims on the merits and affirmed the judgment and sentence against him. Dkt. 28-2.

Petitioner filed a pro se application for post-conviction relief in state district court on April 19, 2017. Dkt. 28-3, at 1. In that application, Petitioner claimed appellate counsel provided constitutionally ineffective assistance by (1) omitting a claim of prosecutorial misconduct based on the prosecutor's failure to disclose exculpatory evidence, in violation of Petitioner's Fourteenth Amendment rights to due process, as interpreted in *Brady v. Maryland*, 373 U.S. 83 (1963); (2) omitting a claim that trial counsel was ineffective for failing (a) to hire or consult an expert witness, (b) conduct an adequate pretrial investigation, (c) interview or call defense witnesses, and (d) request discovery or interview State witnesses before trial; and (3) omitting a claim that the State failed to prove every element of the charged offense, in violation of the Fifth Amendment. Dkt. 28-3, at 2-9.

The state district court denied Petitioner's application for post-conviction relief on September 19, 2017. Dkt. 23, at 33-34. In its order denying relief, the state district court construed the application as asserting two issues: prosecutorial misconduct and ineffective assistance of trial and appellate counsel. *Id.* As to the first issue, the court found that "[n]o information was withheld from [Petitioner]," and that "[t]here was no failure to disclose exculpatory evidence and no prosecutorial misconduct." *Id.* at 33. As to the second issue, the court concluded (1) that any additional claims regarding trial counsel's ineffectiveness that were not raised on direct appeal were "waived" and "barred from consideration," and (2) that Petitioner failed to establish either that appellate counsel performed deficiently or that Petitioner suffered resulting prejudice. *Id.* at 33-34.

3

Petitioner filed a timely post-conviction appeal. Dkt. 28-5, at 1. In his brief-in-support of his post-conviction appeal, Petitioner claimed the state district court erred in rejecting his ineffective assistance of appellate counsel claim. Dkt. 28-4, at 5. In support, he argued appellate counsel was ineffective for failing to assert five claims on direct appeal: (1) that Petitioner was denied his presumption of innocence and his rights to due process and equal protection, in violation of the Fourteenth Amendment, because his murder conviction is based on an undetermined cause of death, (2) "that a computer simulation of [the victim's] fall off the bridge" should have been conducted, (3) that false evidence, specifically, testimony from Jay Long, was used in the preliminary hearing to establish probable cause to bind Petitioner over for trial, (4) that the presiding judge was biased and operated under a conflict of interest, and (5) that trial counsel was ineffective for (a) failing to consult or hire an expert witness and (b) failing to interview or call defense witnesses. Dkt. 28-4, at 6-12. In an unpublished order filed March 27, 2018, in Case No. PC-2017-1025, the OCCA affirmed the state district court's order denying post-conviction relief. Dkt. 28-5.

Petitioner commenced this federal habeas action on December 28, 2017, while his state post-conviction proceeding was pending. Dkt. 1, at 1. The Court detailed the procedural history of this action in its September 10, 2018 Order, *see* Dkt. 22, at 1-5, and finds it unnecessary to repeat that history here. In that same Order, the Court directed Petitioner to file an amended petition and denied as moot Respondent's motion to dismiss the original petition. Dkt. 22, at 9.

In his amended petition, filed September 14, 2018, Petitioner identifies two grounds for relief: (1) prosecutorial misconduct, and (2) insufficiency of the evidence. Dkt. 23, at 5, 7. Respondent moves to dismiss the amended petition, asserting that Petitioner failed to exhaust available state remedies as to either of his habeas claims, as required under 28 U.S.C. § 2254(b)(1)(A). Dkts. 27, 28.

**II.    Analysis**

Before seeking federal habeas relief, a state prisoner must exhaust available state remedies. 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement is not jurisdictional. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). Rather, it is "a rule of comity" that "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To satisfy the exhaustion requirement, "a federal habeas petitioner must have first fairly presented the substance of his federal habeas claim to state courts." *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002). The substance of a federal claim "includes not only the constitutional guarantee at issue, but also the underlying facts that entitle a petitioner to relief." *Williams v. Trammell*, 782 F.3d 1184, 1210 (10th Cir. 2015). In other words, the "presentation of a 'somewhat similar' claim is insufficient to 'fairly present' a federal claim before the state courts." *Bland v. Sirmons*, 459 F.3d 999, 1012 (10th Cir. 2006). Proper exhaustion requires that the claim presented in state court "must be the 'substantial equivalent' of its federal habeas counterpart." *Grant v. Royal*, 886 F.3d 874, 891 (10th Cir. 2018) (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)), *cert. denied sub nom. Grant v. Carpenter*, 139 S. Ct. 925 (2019); *see also Bland*, 459 F.3d at

1011 (explaining that a habeas "petitioner cannot assert entirely different arguments from those raised before the state court"). In addition, proper exhaustion requires that the federal claim be "properly presented to the highest state court, either by direct review or in a postconviction attack." *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994); *see also Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so").

As further discussed below, the Court agrees with Respondent that Petitioner failed to exhaust available state remedies as to the prosecutorial misconduct claim alleged in claim one of the amended petition. The Court finds, however, that Petitioner fairly presented the sufficiency-of-the-evidence claim alleged in claim two of the amended petition by presenting it to the OCCA on direct appeal.[4] Notwithstanding Petitioner's failure to exhaust claim one, the Court finds that both claims should be denied on the merits. *See Granberry*, 481 U.S. at 131 (noting that "there are some cases in which it is appropriate for an appellate court to address the merits of a habeas corpus petition notwithstanding the lack of complete exhaustion"); *Moore v. Schoeman*, 288 F.3d 1231, 1235 (10th Cir. 2002) (explaining that "a district court faced with a habeas petition containing unexhausted claims may either (1) dismiss the entire petition without prejudice in order to permit

---

[4] Petitioner challenged the sufficiency of the evidence in proposition four of his direct appeal. Dkt. 28-1, at 36; Dkt. 28-2, at 4. He also claimed, in state post-conviction proceedings, that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence. Dkt. 28-3, at 8-9; Dkt. 28-4, at 6-7.

exhaustion of state remedies, or (2) deny the entire petition on the merits"); 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

### A. Prosecutorial misconduct (claim one)

In his amended petition, Petitioner alleges that the prosecutor committed misconduct (1) by knowingly presenting perjured testimony from two witnesses, Dr. Joshua Lanter and Angela Berg, both of whom work for the state medical examiner's office, and (2) by failing to disclose evidence that "a large tissue sample was taken" during the autopsy of the victim and testing of that sample "revealed large quantities of numerous drugs." *Id.* at 15, 18-19.

Petitioner first alleged prosecutorial misconduct in his application for post-conviction relief, filed April 19, 2017. Dkt. 23, at 6; Dkt. 28-3, at 2. There, Petitioner asserted that appellate counsel was ineffective, in part, for omitting a prosecutorial misconduct claim on direct appeal. Dkt. 28-3, at 2. More specifically, he asserted that appellate counsel should have raised a *Brady* claim based on the prosecutor's alleged "fail[ure] to disclose exculpatory evidence regarding the toxicology report." *Id.* at 2-3. In its order denying post-conviction relief, the state district court addressed the merits of the *Brady* claim and found no factual support for that claim. Dkt. 23, at 33.

Critically, as Respondent points out, Petitioner did not seek further review of the state district court's findings and conclusions with respect to the *Brady* claim—either as an independent substantive claim or as an underlying claim asserted to support his ineffective-

assistance-of-appellate-counsel claim—when he filed his post-conviction appeal. Dkt. 28, at 6; Dkt. 28-4, at 5-12. Instead, Petitioner alleged in his post-conviction appellate brief only that the state district court erred in determining appellate counsel was ineffective for omitting five claims—none of which was the *Brady* claim he presented to the state district court. Dkt. 28-4, at 5-12. In one portion of his post-conviction appellate brief, Petitioner did argue that appellate counsel was ineffective for failing to raise a claim that the prosecutor presented false testimony at the preliminary hearing. *Id.* at 8-9. But there, Petitioner alleged that Jay Long, a federal prisoner, provided false testimony at the preliminary hearing, and cited one case for the proposition that a prosecutor violates due process by knowingly using false testimony. *Id.* at 9. Even liberally construed, Petitioner's claim that the prosecutor knowingly presented Long's false testimony at the preliminary hearing bears no relation to either (1) the *Brady* claim Petitioner presented to the state district court or (2) the prosecutorial misconduct claim Petitioner presents in his amended petition.

Based on the foregoing, the Court agrees with Respondent that Petitioner failed to exhaust the prosecutorial misconduct claim he presents in claim one of the amended petition. Nonetheless, the Court finds that, notwithstanding the lack of exhaustion, claim one should be denied on the merits.

Liberally construed, Petitioner's prosecutorial misconduct claim involves two sub-claims: (1) the *Brady* claim he presented to the state district court relating to the prosecutor's alleged failure to disclose favorable results from a toxicology report; and (2) a

8

*Napue*[5] claim based on the prosecutor's alleged knowing use of false testimony from Dr. Lanter and Berg. Dkt. 23, at 15, 18-19. Neither claim has merit.

To prevail on a *Brady* claim, a defendant must show that the prosecutor failed to disclose evidence "that is both favorable to the accused and 'material either to guilt or to punishment.'" *United States v. Bagley*, 473 U.S. 667, 674 (1985) (quoting *Brady*, 373 U.S. at 87). "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-70 (2009).

To prevail on a *Napue* claim, a defendant must show that "(1) a government witness committed perjury, (2) the prosecution knew the testimony to be false, and (3) the testimony was material." *United States v. Garcia*, 793 F.3d 1194, 1207 (10th Cir. 2015). The first two showings necessary to establish a *Napue* violation require a reviewing court to make factual findings. *Id.* The third showing requires the reviewing court to apply a harmless-error test; specifically, "[t]he false testimony is material 'unless failure to disclose [the perjury] would be harmless beyond a reasonable doubt.'" *Id.* (quoting *Bagley*, 473 U.S. at 680).

In claim one, Petitioner alleges a *Napue* violation occurred when the prosecutor failed to correct Dr. Lanter's "blatant lie" that there was no "soft tissue left on [the victim's]

---

[5] In *Napue v. Illinois*, 360 U.S. 264, 269 (1959), the United States Supreme Court explained that a due process violation occurs when the State obtains a conviction "through the use of false evidence, known to be [false] by representatives of the State" regardless of whether the State either solicits the false evidence or simply "allows it to go uncorrected when it appears."

9

body to do a tissue sample for a toxicology screen due to the fact [the victim's body] was reduced to skeletal remains." Dkt. 23, at 15, 18. In addition, Petitioner alleges the prosecutor allowed Berg to falsely testify that the victim's "remains were only skeletal when she was found." *Id.* Though not entirely clear, Petitioner appears to base his *Brady* claim on his belief that "a tissue sample was taken and it revealed large quantities of numerous drugs and had it been shown at discovery which is what should have been done by law [he] would of [sic] never been charged let alone bound over for trial." *Id.* at 19.

Significantly, in rejecting Petitioner's *Brady* claim, the state district court made factual findings that are fatal to both of Petitioner's sub-claims. In denying relief, the state district court stated,

> *No information was withheld from the Defendant.* The Medical Examiner's Report (*including a Toxicology Report*) *was introduced into evidence at trial.* Defendant's assertion that the Medical Examiner testified that there were no signs of trauma to the victim is false. The Medical Examiner's Report lists "multiple perimortem skeletal injuries" and the Anthropology Consultant Report (reference in the Medical Examiner's Report) notes a total of 28 fractures.
>
> *Defendant's claim that a toxicology screen revealed lethal levels of opiates in the victim's system is likewise false.* The Forensic Toxicologist was limited in the types of screens he could perform. Only two tests were performed: an alkaline drug screen (liver) and an acid/neutral drug screen (liver). *Not only did these tests fail to detect lethal levels of drugs in the decedent, they failed to detect any drugs at all.*
>
> *There was no failure to disclose exculpatory evidence* and no prosecutorial misconduct.

Dkt. 23, at 33 (emphases added). The state district court's factual findings not only are presumed correct, *see* 28 U.S.C. § 2254(e)(1), but also are consistent with the Medical Examiner's Report, Anthropology Consultant Report, and Toxicology Report, all of which

Petitioner submitted to this Court with his amended petition, *see* Dkt. 23, at 22-32. Those reports confirm that the victim's body "was found in varying stages of decomposition," *id.* at 22, that some of the body's "tissues were mummified," *id.*, that Berg removed "soft tissue" during the autopsy to examine the "partially skeletonized remains," *id.*, that the victim's organs were "primarily liquified and severely decomposed," *id.* at 29, and that Dr. Lanter performed drugs screens on liver tissue and detected no drugs in the victim's system, *id.* at 32.

In short, the documentary evidence submitted with the amended petition confirms the state district court's findings that Petitioner's *Brady* claim lacks factual support and demonstrates that his *Napue* claim also lacks factual support. For these reasons, the Court denies habeas relief on claim one.

B. **Sufficiency of the evidence (claim two)**

In his amended petition, Petitioner alleges the evidence presented at trial is insufficient to support his first-degree murder conviction. Dkt. 23, at 7, 16, 20. He specifically asserts that the autopsy report (1) shows that the victim's injuries were consistent with a fall, (2) does not support the State's accusation that Petitioner choked the victim, and (3) reflects that Dr. Lanter ruled the cause of death "undetermined." *Id.* at 16. Petitioner claims, apparently based on the autopsy report, that the State "charged, prosecuted, and convicted [him] on nothing more than accusations with no evidence whatsoever to back up the claims [it] made against [him]." *Id.* at 20.

Petitioner challenged the sufficiency of the evidence on direct appeal. Dkt. 28-1, at 36-43. In his state appellate brief, Petitioner asserted that, under Oklahoma law, the State

was required to prove that he unlawfully caused the death of a human with malice aforethought. *Id.* at 37 (citing OKLA. STAT. tit. 21, § 701.7(A) (2011)). Petitioner primarily argued that the State failed to "prove the element of intent" because "there was a complete lack of direct evidence provided by the State to support the element of malice." *Id.* at 37-43. Petitioner also raised a sufficiency-of-the-evidence claim in his application for post-conviction relief, albeit under the umbrella of his ineffective-assistance-of-appellate-counsel claim. Dkt. 28-3, at 8-9. In the post-conviction application, Petitioner cited *Jackson v. Virginia*, 433 U.S. 307 (1979), and asserted "there was **absolutely no** physical or DNA evidence to establish that Petitioner was involved in the death of [the victim] and the medical examiner testified he had ruled the death as <u>undermined [sic] and unknown</u>, and the toxicology screen revealed lethal levels of opiates in the victim's system, which was a probable cause of death." Dkt. 28-3, at 9 (boldface and underlining in original).

Notably, in his post-conviction appellate brief, Petitioner clarified that the basis for his challenge to the sufficiency of the evidence was that the cause of death was undetermined and acknowledged that he was "incorrect in believing the toxicology report noted that there was [sic] drugs in [the victim's] system." Dkt. 28-4, at 4. Petitioner nevertheless alleged on post-conviction appeal that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on grounds that "[a] murder conviction cannot be sustained on an undetermined cause of death" and that "the only evidence that the State presented was circumstantial by two jailhouse informants Mr. Jay Long and Mr. Michael Whitaker." *Id.* at 6-7.

Respondent contends Petitioner failed to exhaust the sufficiency-of-the-evidence claim as presented in claim two of the amended petition. Dkt. 28, at 3-10. Respondent specifically argues that Petitioner's state claim challenged the sufficiency of the evidence to support his *intent to kill the victim*, whereas his federal habeas claim challenges the sufficiency of the evidence to support *the victim's cause of death*. *Id.* at 3, 6.

As previously discussed, to satisfy the exhaustion requirement, a petitioner's habeas claim must be the "substantial equivalent" of the claim he or she presented in state court. *Connor*, 404 U.S. at 278. Respondent's argument appears to require identical, rather than "substantial," equivalence. Despite slight shifts in the focus of his sufficiency-of-the-evidence claim, Petitioner consistently argued in state court, most importantly on direct appeal, that the State's case against him was entirely circumstantial and that the evidence was insufficient to support his conviction. *See* Dkt. 28-1, at 36-43; Dkt. 28-3, at 8-9; Dkt. 28-4, at 6-7. Because Petitioner "did present the 'essential substance' of this claim to the state court" on direct appeal, the Court finds that he sufficiently exhausted claim two. *Hawkins*, 291 F.3d at 664 (quoting *Engberg v. Wyoming*, 265 F.3d 1109, 1116 (10th Cir. 2001)); *see also Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (noting that, for purposes of exhaustion, "the crucial inquiry is whether the 'substance' of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim").

Moreover, the OCCA's decision rejecting Petitioner's sufficiency-of-the-evidence claim suggests the OCCA did not adjudicate that claim as one narrowly challenging only

the sufficiency of the element of intent. In rejecting Petitioner's sufficiency-of-the-evidence claim, the OCCA stated:

> In Proposition Four, Appellant challenges the sufficiency of the evidence to support his convictions. This Court will not disturb the verdict of a jury where the evidence, viewed in the light most favorable to the State, permits any rational trier of fact to find the essential elements of the charged crimes beyond a reasonable doubt. *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-204. The evidence here is legally sufficient. Proposition Four is denied.

Dkt. 28-2, at 4. In light of the breadth of the OCCA's decision, Respondent's exhaustion argument is not well-taken. *Cf. Hawkins*, 291 F.3d at 663 ("Where, as here, 'a state court [actually] decides an issue on the merits, state procedural bars will not preclude federal habeas review.'" (quoting *Hooks v. Ward*, 184 F.3d 1206, 1215 (10th Cir. 1999))).

However, the fact that the OCCA adjudicated the merits of Petitioner's sufficiency-of-the-evidence claim creates a different hurdle that Petitioner cannot overcome. When a state court adjudicates the merits of a federal claim, a federal habeas court may not grant habeas relief on that claim unless the petitioner first demonstrates that the state court's adjudication of the claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," *id.* § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

"As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being

14

presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. By design, this showing is difficult to make because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

As the OCCA recognized in rejecting Petitioner's claim, *Jackson v. Virginia*, 443 U.S. 307 (1979), states the controlling legal standard. Dkt. # 28-2, at 4; *see Johnson v. Mullin*, 505 F.3d 1128, 1134 (10th Cir. 2007) (identifying *Jackson* as the constitutional standard for reviewing state habeas petitioner's sufficiency-of-the-evidence claim).[6] Under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam).

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

---

[6] The OCCA did not expressly cite *Jackson*, but did so implicitly through its citation to *Spuehler* because *Spuehler* applied *Jackson* in examining a sufficiency-of-the-evidence claim. *Spuehler*, 709 P.2d at 203-04.

15

*Id.* (internal citations omitted) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)). Simply put, when a state court applies *Jackson* to reject a sufficiency-of-the-evidence claim, the first, and quite often the last, question for a federal habeas court is whether the state court's application of *Jackson* was objectively unreasonable. And to obtain a favorable answer to that question, the AEDPA requires a habeas petitioner to "show[] there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

Here, Petitioner does not suggest, let alone show, that the OCCA had no reasonable basis to reject his sufficiency-of-the-evidence claim. *See* Dkt. 23, generally. Rather, Petitioner reiterates his position that the State could not convict him on circumstantial evidence, particularly when the victim's cause of death was "undetermined." Dkt. 23, at 7, 16, 20. Petitioner's position is legally flawed because the Supreme Court "ha[s] never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003); *see also United States v. Hill*, 786 F.3d 1254, 1263 (10th Cir. 2015) ("Circumstantial evidence alone may permissibly support a jury's guilty verdict."). Further, Petitioner's argument that the "undetermined" cause of death renders the jury's verdict irrational wholly ignores that the autopsy report was presented at trial. *See* Dkt. 23, at 33. Petitioner's own statement of the facts, as presented in his direct appeal brief, demonstrates that the jury heard evidence that Petitioner was the last person seen with the victim, that the victim died from multiple injuries after a 36-foot fall from a bridge, and that the victim's injuries were consistent with an accidental fall. Dkt. 28-1, at 11-15, 37-43. The jury also heard evidence that, following his arrest, Petitioner told a fellow jail

inmate that he became angry with the victim and pushed her off the bridge, checked on her after she fell, found she was still breathing, and left her to die. Dkt. 28-1, at 11-15, 37-43. Finally, as stated, the jury was fully aware of the findings in the autopsy report—particularly, Dr. Lanter's opinion that the cause of death was "undetermined." Dkt. 23, at 30, 33.

As the Supreme Court explained in *Coleman*, it was the jury's responsibility to draw conclusions from this evidence, and it was the OCCA's duty to determine whether "no rational trier of fact could have agreed with the jury." 566 U.S. at 651. Applying *Jackson*, the OCCA determined that the evidence was "legally sufficient" to support the jury's verdict. Dkt. 28-2, at 4. And nothing in the amended petition persuades this Court that there was no reasonable basis for the OCCA's determination. *See* Dkt. 23, generally. As a result, the Court finds that § 2254(d) bars habeas relief on claim two.

## III. Conclusion

Based on the foregoing analysis, the Court finds that Petitioner did not exhaust the prosecutorial claim, as presented in claim one of the amended petition, and did exhaust the sufficiency-of-the-evidence claim, as presented in claim two of the amended petition. The Court further finds that both claims should be denied on the merits rather than dismissed to permit further exhaustion. Consequently, the Court denies Respondent's motion to dismiss the amended petition for failure to exhaust necessary state remedies and denies Petitioner's amended petition for a writ of habeas corpus.

17

## IV. Certificate of Appealability

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A district court may issue a certificate of appealability (COA) "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When, as here, a district court denies a habeas petition by rejecting the merits of petitioner's constitutional claims, the petitioner must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons stated in the analysis section of this Opinion, the Court concludes that reasonable jurists would not debate the Court's assessment of Petitioner's constitutional claims. The Court therefore declines to issue a certificate of appealability as to any issues presented in the amended petition.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The original petition for writ of habeas corpus (Dkt. 1) is **declared moot**.
2. Respondent's motion to dismiss for failure to exhaust necessary state remedies (Dkt. 27) is **denied**.
3. The amended petition for writ of habeas corpus (Dkt. 23) is **denied**.
4. A certificate of appealability is **denied**.
5. A separate judgment shall be entered in this matter.

**DATED** this 19th day of April 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE